UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JCONCEPICON HERNANDEZ LOERA,<br><br>Petitioner,<br><br>v.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Respondent. | No. 2:18-cv-0853 KJM KJN<br><br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2015 conviction for oral copulation of a person under fourteen years of age, continuous sexual abuse, and lewd act upon a child. Petitioner was sentenced to sixteen years in state prison. Petitioner claims that there was insufficient evidence to support his conviction for committing a lewd and lascivious act upon a child, and also claims trial counsel was ineffective for failing to object to the trial court's imposition of a mid-term sentence for the crime of continuous sexual abuse when it relied upon two particular aggravating factors. After careful review of the record, this court concludes that the petition should be denied.

////

1

II. <u>Procedural History</u>

On November 3, 2015, a jury found petitioner guilty of oral copulation of a person under the age of fourteen (Cal. Pen. Code, § 288a(c)(1)[1]), continuous sexual abuse (Cal. Pen. Code, § 288.5(a)), and lewd act upon a child (Cal. Pen. Code, § 288(a)). (LD 9 at 100-02.)[2] On January 11, 2016, petitioner was sentenced to a total sixteen years in state prison. (LD 9 at 151-52.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. (LD 2-4.) The Court of Appeal affirmed the conviction on July 5, 2017. (LD 1.)

Petitioner filed a petition for review in the California Supreme Court (LD 5), which was denied on September 13, 2017 (LD 6).

Petitioner filed the instant petition on April 9, 2018. (ECF No. 1.) Respondent filed an answer on July 3, 2018. (ECF No. 13.) Petitioner filed a traverse on August 2, 2018. (ECF No. 15.)

III. <u>Facts</u>[3]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> <u>Prosecution Evidence</u>
>
> Defendant married Y.L. in December 2006. They lived together with Y.L.'s five year-old son A.L. and her daughter CW01, who was born in August 2000. The couple separated in October 2010. Y.L. had two children with defendant before they separated. While they were separated, defendant would occasionally stay at her home or have the children stay overnight with him. He moved back in with Y.L. in 2012.

---

[1] Renumbered to section 287 effective January 1, 2019.

[2] "LD" refers to Lodged Document and "ECF" refers to the documents filed electronically on the court's docket – page numbers references are to those automatically assigned in the CM/ECF system; "RT" refers to the Reporter's Transcript on Appeal; "CT" refers to the Clerk's Transcript on Appeal.

[3] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Loera</u>, No. C081300 (July 5, 2017), a copy of which was lodged by respondent as Lodged Document 1.

2

In July 2014, defendant came home late after spending the night drinking with his friends. Y.L. heard him come home, but he did not come to their bedroom. After determining defendant was not in the bathroom, Y.L. peeked into CW01's room. She turned on the light and saw defendant lying in bed with CW01, who was on her side facing defendant. When the lights went on, CW01 covered her face with her hands, while defendant jumped back from her and onto his back. Y.L. pulled off the blankets. Defendant's pants were unbuttoned and unzipped, and CW01's tank-top and bra were pulled up.

Defendant sat up. Y.L. asked defendant what was going on and then punched him in the face. She eventually asked CW01 if anything inappropriate happened. When CW01 said no, Y.L. became convinced she misconstrued what she had seen. She and defendant never talked about the matter again.

CW01 testified that defendant started sexually abusing her when she was in the fifth grade. The first time he molested her, CW01 went into the bedroom to get a diaper for her youngest sibling. Defendant followed her in, locked the door, pulled down his pants, grabbed her head, and made her perform oral sex on him. It stopped when two of her siblings knocked on the door, causing defendant to stop holding her head. She did not tell anyone because she was afraid defendant would do something to her. She was 11 at the time.

Between the first incident of abuse and August 2013, defendant molested her about 50 times. In addition to having her perform oral sex on him, defendant also would touch her breasts underneath her clothing, force her to put her hand on his penis, and kiss her on the lips or neck. He told CW01 that bad things would happen to her mother if she told her.

Regarding the July 2014 incident Y.L. saw, CW01 recalled being on top of defendant with his pants unzipped and her shirt pulled up to her chest. Defendant pushed her to the side when Y.L. walked in. Y.L. "flipped out" while CW01 pretended to be sleeping.

The last time defendant abused her was in the summer of 2014, between the end of seventh grade and the beginning of eighth grade at her uncle's trailer in Pollock Pines. CW01 did not know the exact date it happened. She, her siblings, and mother were going to the lake; they stopped by her uncle's trailer to see if defendant wanted to go with them. Defendant, who had been drinking, was alone when CW01 entered the trailer. CW01 tried to leave the trailer, but defendant pushed her onto the bed and began kissing her. When she got up and started to leave, defendant offered her $20 to stay and help him with the house. CW01 left without responding.

Defendant became upset in September 2014 when he discovered about $3,000 of his money was missing. He told Y.L. about it and that he thought one of the children might be involved. CW01 admitted taking the money from defendant, in roughly $200 increments each week. She used the money to buy things after school or gave the money to a friend.

3

> In October 2014, CW01 wrote a letter describing defendant sexually abusing her and gave it to an adult she trusted at school. Y.L. then agreed to cooperate with the authorities. Defendant was arrested shortly thereafter.
>
> The Defense
>
> Defendant testified and denied sexually abusing CW01. The July 2014 incident happened when he came home after a night of drinking and CW01 asked him for a hug. He decided to sleep with the kids for awhile, so he pulled a blanket over CW01 and him. CW01 stole $3,000 from him starting in June 2014. He confronted his children about the thefts two to three days before his arrest.

(People v. Loera, LD 1 at 2-4.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v.

Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes federal

---

[4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

5

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith,

539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims[5]

A. *Insufficiency of the Evidence*

Petitioner claims that there is insufficient evidence to support his conviction for a lewd

---

[5] The undersigned elects to follow respondent's order addressing petitioner's claims. As pointed out by respondent, that is the order in which the state courts addressed the claims.

7

and lascivious act. (ECF No. 1 at 7-8, 24-27.) Respondent maintains the state court's determination was reasonable, thus precluding relief in this court. (ECF No. 13 at 16-19.)

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> *Sufficiency of the Evidence Relating to Lewd and Lascivious Acts*
>
> Defendant contends there is insufficient evidence that the victim was under the age of 14 to support the lewd and lascivious acts conviction.
>
> In determining the sufficiency of the evidence, we ask whether "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Hatch* (2000) 22 Cal.4th 260, 272; italics omitted.) We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "'"'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.'"' [Citations.]" (*People v. Casares* (2016) 62 Cal.4th 808, 823-824.) Thus, reversal is not warranted unless there is no hypothesis on which there exists substantial evidence to support the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)
>
> The lewd and lascivious count was based on the last time defendant molested CW01.
>
> We note that, while the information alleged that this offense took place between May 1, 2014 and June 2014, the prosecutor's closing argument made clear that the People relied on the last incident of molestation, in CW01's uncle's trailer, as the act constituting the offense. Defendant does not claim any error from this variance between the information and the People's theory at trial.
>
> One element of the offense of the lewd and lascivious acts count is that the victim is at the time of the act under the age of 14. (§ 288, subd. (a).) Since CW01 testified that this occurred in the summer of 2014 between seventh and eighth grade, and her 14th birthday was

in August 2014, defendant contends the evidence was insufficiently specific of the date of the crime to support a finding that it took place before CW01's 14th birthday.

Defendant relies primarily on two cases involving continuous sexual abuse of a child under section 288.5, *People v. Valenti* (2016) 243 Cal.App.4th 1140 (*Valenti*), and *People v. Mejia* (2007) 155 Cal.App.4th 86 (*Mejia*). Under section 288.5, subdivision (a), the prosecution must prove that there were three or more incidents of abuse, that at least three months elapsed between the first and third incidents, and that the victim was under 14. (§ 288.5, subd. (a); *Mejia*, at p. 94.)

In *Mejia*, the defendant was charged with committing continuous sexual abuse "'on or between June 1, 2004 and September 17, 2004.'" (*Mejia, supra*, 155 Cal.App.4th at p. 93.) The evidence showed the victim was first abused some unspecified time in June 2004 and continued every month through September, and that she turned 14 on September 18, 2004. (*Id*. at pp. 94, 95.) Since "the only reasonable inference permitted by the evidence was that defendant's abuse began sometime in June and continued to some date in September—but the jury could only speculate that the first incident occurred early enough in June to satisfy the 90-day requirement expiring on September 17, 2004," there was insufficient evidence to support the conviction. (*Id*. at p. 95.)

*Valenti* followed a similar pattern. The defendant's crime was alleged to have taken place "'[o]n or between January 1, 2012 and July 11, 2012.'" (*Valenti, supra*, 243 Cal.App.4th at p. 1159.) The victim first visited the defendant at some point in January 2012. (*Ibid*.) He then had a second visit at the defendant's home, and a long time after that, a third visit, and a fourth visit a couple of weeks after the third. (*Ibid*.) "However, it was not until sometime that summer, 'a couple months' after his fourth visit," that the defendant started to molest the victim. (*Ibid*.) As in *Mejia*, the court of appeal reversed the section 288.5 conviction because the evidence of when the abuse started was not specific enough to support an inference that it started no later than 90 days before the last day of the last incident, July 11, 2012, the day before the defendant was reported to the police. (*Id*. at pp. 1159-1160.)

During her direct examination, when asked about the incident in her uncle's trailer, CW01 first testified that she did not know when it happened. Further questioning established that she was in seventh grade at Sierra Ridge School before the summer of 2014, was on vacation from school in summer 2014, started eighth grade in August 2014, and defendant was arrested in October of that year.

9

> The prosecutor then asked CW01: "Okay. So we have like four windows of time, your 7th grade school year at Sierra Ridge when you're 13, the summer when school ends between the time school ends and when school starts for 8th grade year, and then your 14th birthday, and the time the Defendant is arrested. As you think about those windows of time, does this last event fit into any of those windows in your memory?" CW01 replied, "In my 7th grade summer vacation year." The prosecutor asked, "Between 7th and 8th grade?" CW01 answered, "Yes."
>
> The prosecutor's question established a time line starting with CW01's seventh grade school year, then her summer vacation, followed by her starting the eighth grade, which was followed by her 14th birthday. The jury could reasonably infer that CW01's answer, that the incident happened during her summer vacation between seventh and eighth grades, establishes that it happened before she started eighth grade and therefore also before her 14th birthday. The time line presented by the prosecutor and CW01's answer in response to it thus distinguishes *Valenti* and *Mejia*, cases in which there was no possible inference the jury could draw that would support the convictions in those cases. Accordingly, we conclude the section 288 conviction is supported by substantial evidence.

(LD 1 at 5-8.)

### 1. Applicable Legal Standards

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Thus, one who alleges that the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. Herrera v. Collins, 506 U.S. 390, 401-02 (1993). Nevertheless, the petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The California standard for determining the sufficiency of the evidence to support a conviction has been held by the California Supreme Court to be identical to the federal standard enunciated by the United States Supreme Court in Jackson. See

People v. Johnson, 26 Cal.3d 557, 576 (1980). Federal habeas relief is available only if the state court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of Jackson. Juan H., 408 F.3d at 1275 n.13.

Habeas claims based upon alleged insufficient evidence therefore "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam). As noted by the Supreme Court:

> First, on direct appeal, "it is the responsibility of the jury−not the court−to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

Id. (citations omitted).

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. In performing a Jackson analysis, a jury's credibility determinations are "entitled to near-total deference." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). When the factual record supports conflicting inferences, the federal court must presume that the trier of fact resolved the conflicts in favor of the prosecution, and must defer to that resolution. Jackson, 443 U.S. at 326.

2. Analysis

California Penal Code section 288(a) provides as follows:

> Except as provided in subdivision (i), a person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

The sole issue here surrounds the evidence pertaining to the element requiring proof beyond a reasonable doubt that the victim was "under the age of 14 years" at the time of the last

11

incident. The victim was born on August 27, 2000. (1 RT 115.) Hence, she would turn fourteen years old on August 27, 2014.

Relevant to this claim, the victim testified that the last time petitioner "did anything like this" to her was at her uncle's "new place" in Pollock Pines. (1 RT 142.) The victim remembered the events of the day, but not the specific date. (1 RT 142.) To clarify the time period within which the date of the last act occurred, the prosecutor asked the victim a series of questions:

> [PROSECUTOR]: Do your best to estimate for us using and you've got hallmarks, right? We know that he was [ar]rested last October, a couple months after you turned 14. You turned 14 in August of 2014, the same year that you started 8th grade?
>
> A. Yes.
>
> Q. So then you have the summer of 2014. And that previous school year you were at Sierra Ridge as a 7th grader, right?
>
> A. Can you repeat that?
>
> Q. Yeah. I'm just kind of building that framework we built this morning so you can start thinking about when this last event took place. We'll use a couple frames of reference, a couple of things to look at times.
>
> You started 8th grade August of 2014, a year ago, at Sierra Ridge - -
>
> A. Yes.
>
> Q. -- right? Right after you turned 14. And just a couple months after that, the Defendant was arrested?
>
> A. Yes.
>
> Q. Okay. So kind of have that window of time between the time you started 8th grade in August and the time he was arrested. That's a little window of time. Now, did you have a summer vacation where you were out of school the summer between 7th grade and 8th grade?
>
> A. Yes.
>
> Q. Okay. And do you remember kind of that window of time?
>
> A. Some of it.
>
> Q. Okay. So we'll use that as another window. And then we have your 7th grade school year, which would have started when you turned make sure I don't confuse myself.

12

| | |
|---|---|
| 1 | Would you have turned 13 as you started 7th grade at Sierra Ridge? |
| 2 | A. Yes. |
| 3 | Q. Okay. So we have like four windows of time, your 7th grade school year at Sierra Ridge when you're 13, the summer when school ends between the time school ends and when school starts for 8th grade year, and then your 14th birthday, and the time the Defendant is arrested. As you think about those windows of time, does this last event fit into any of those windows in your memory? |
| 4 | |
| 5 | |
| 6 | |
| 7 | A. In my 7th grade summer vacation year. |
| 8 | Q. Between 7th grade and 8th grade? |
| 9 | A. Yes. |
| 10 | Q. I'm sorry? |
| 11 | A. Yes. |
| 12 | Q. Yes. Okay. Remember, speak right into that microphone. Okay? |
| 13 | A. Okay. |
| 14 | Q. Okay. So it was that summer, and it was at a place that your uncle was going to move into? |
| 15 | A. Yes. |

(1 RT 142-44.)

The following passage reveals the victim testified the last incident occurred before she turned fourteen years old because it happened during her "7th grade summer vacation," when she was thirteen years of age, and before "8th grade" began, both of which occurred before her birthday. In light of this testimony, a rational juror could have concluded beyond a reasonable doubt that the final incident occurred before the victim turned fourteen years old. Jackson, 443 U.S. at 319; see also Coleman v. Johnson, 566 U.S. at 651 (court may set aside verdict only if no rational trier of fact would have agreed with jury).

There was no other testimony offered on the issue of the victim's age at the time of the last incident. Here, the jury plainly accepted the victim's testimony concerning the date range within which the last incident fell to be credible, meaning it believed the incident occurred while the victim was thirteen years of age. And, credibility determinations are to be accorded "near total deference." Bruce v. Terhune, 376 F.3d at 957; see also People of Territory of Guam v.

13

McGravey, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).

Whether the school year began later than the victim's birthday would amount to some evidence from which the jury could have inferred the victim was fourteen at the time of the last occurrence, but even conflicting reasonable inferences do not entitle petitioner to relief in this court. Jackson, 443 U.S. at 326 (the federal court must presume that the trier of fact resolved the conflicts in favor of the prosecution, and must defer to that resolution); see also Cavazos v. Smith, 565 U.S. 1, 7 (2011) (per curiam) (Jackson "instructs that a reviewing court 'faced with a record of historical facts that support conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting Jackson, 443 U.S. at 326).

The state court's determination that sufficient evidence existed to support petitioner's conviction for a violation of California Penal Code section 288(a) was not contrary to, or an unreasonable application of, clearly established Supreme Court authority. 28 U.S.C. § 2254(d). As a result, the undersigned recommends the claim be denied.

B. *Ineffective Assistance of Counsel/Jury Instruction*

Petitioner claims that trial counsel was ineffective for failing to object to the trial court's imposition of a mid-term sentence regarding count two (Cal. Pen. Code, § 288.5 [continuous sexual abuse]) where it relied on two factors that were not supported by substantial evidence. (ECF No. 1 at 5-6, 27-30.) Respondent contends the state court's rejection of the claim was reasonable, and that petitioner is not entitled to relief. (ECF No. 13 at 19-23.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

*Sentencing*

> Defendant contends that the trial court relied on two improper aggravating factors, the victim's particular vulnerability and defendant's planning, in imposing the middle term for continuous sexual abuse, and that trial counsel was ineffective for failing to object. His failure to object to the allegedly improper factors at

14

sentencing forfeits the contention on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 351; *People v. Partida* (2005) 37 Cal.4th 428, 434; *People v. Brach* (2002) 95 Cal.App.4th 571, 577 ["Claims of error relating to sentences 'which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner' are waived on appeal if not first raised in the trial court"; italics omitted].) We will nevertheless address defendant's challenge because he contends trial counsel's failure to object amounts to ineffective assistance of counsel.

To establish ineffective assistance of counsel, a defendant must show "counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial. [Citation.]" (*People v. Seaton* (2001) 26 Cal.4th 598, 666.) "[T]he burden is on the defendant to show (1) [defense] counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Lewis* (1990) 50 Cal.3d 262, 288.)

"[T]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation.]" (*People v. Lucas* (1995) 12 Cal.4th 415, 437.) The defendant bears the burden of establishing an ineffective assistance claim. (*Id.* at p. 436.) Overcoming this "high bar is never an easy task. [Citation.]" (*Padilla v. Kentucky* (2010) 559 U.S. 356, 371 [176 L.Ed.2d 284, 297].)

Defendant claims the trial court improperly relied on CW01's age in finding she was particularly vulnerable because all of defendant's crimes, which require the victim be under 14, already take her age into account. (See *People v. Dancer* (1996) 45 Cal.App.4th 1677, 1693-1694 (*Dancer*), disapproved on other grounds in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123 ["'Particular vulnerability,'" may not be used as an aggravating offense where the vulnerability is based solely on age and age is an element of the offense].) He also argues there is insufficient evidence of planning to support the trial court's finding as to that aggravating factor. In support of this argument, defendant claims there is less evidence of planning here than in other cases upholding the use of the planning aggravating factor. (See *People v. Lai* (2006) 138 Cal.App.4th 1227, 1259 [defendant convicted of welfare fraud persistently lied on numerous forms in order to receive welfare benefits not entitled to]; *People v. Forster* (1994) 29 Cal.App.4th 1746, 1758-1759 [defendant convicted of driving while intoxicated went to Mexico for the specific purpose of partying].) We find that both factors were proper.

The sentencing court must state the reasons for imposing the term selected. (§ 1170, subd. (b).) In exercising its discretion to select one of the three authorized prison terms, a trial court may consider many enumerated circumstances in aggravation or mitigation. (Rules 4.420(a) & (b), 4.421, & 4.423.)

As an aggravating factor, victim vulnerability means "defenseless, unguarded, unprotected, accessible, assailable, one who is

15

susceptible to the defendant's criminal act." (*People v. Smith* (1979) 94 Cal.App.3d 433, 436.) "The obvious purpose of increasing punishment based on victim vulnerability is to deter criminal conduct that seeks to exploit the particularly vulnerable victim." (*People v. Spencer* (1996) 51 Cal.App.4th 1208, 1223.) Age alone cannot support a finding of victim vulnerability when the victim's age is an element of the offense, "[h]owever, 'particular vulnerability' is determined in light of the 'total milieu in which the commission of the crime occurred . . . .' [Citation.]" (*Dancer, supra*, 45 Cal.App.4th at p. 1694.)

The trial court did not invoke CW01's age in isolation, as it also cited defendant's role as her stepfather in finding CW01 particularly vulnerable. This role gave defendant access to and authority over CW01 that rendered her more susceptible to defendant's molestation. Where, as here, CW01 was almost three years younger than the minimum age for a victim when the molestation started and the trial court relied on other evidence establishing her vulnerability, the trial court's invocation of her age did not invalidate the vulnerability aggravating factor.

It is an aggravating factor when "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism." (Rule 4.421(a)(8).) The trial court has considerable latitude regarding this factor. (*People v. Mathews* (1980) 102 Cal.App.3d 704, 710.) Defendant carried out the crime repeatedly, around 50 times. He took steps to avoid detection, waiting until CW01's mother was gone, and to prevent CW01 from reporting him, by threatening harm ("bad things") to her mother if she said anything. Together, these constitute sufficient evidence of planning and sophistication to support the trial court's finding. The fact that this evidence differs from that in the cases cited by defendant is of no consequence, as those cases involved different crimes and did not find the evidence of planning insufficient.

Since the trial court did not rely on improper aggravating factors, defense counsel did not provide substandard representation in failing to object to them. Defendant's claim is without merit.

(LD 1 at 8-10.)

1. Applicable Legal Standards

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his trial counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

Under the first prong of the Strickland test, a petitioner must show that counsel's conduct failed to meet an objective standard of reasonableness. Strickland, 466 U.S. at 687. There is "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable

professional assistance." Harrington v. Richter, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689). Petitioner must rebut this presumption by demonstrating that his counsel's performance was unreasonable under prevailing professional norms and was not the product of "sound trial strategy." Strickland, 466 U.S. at 688-89. Judicial scrutiny of defense counsel's performance is "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at the time it occurred, without the benefit of hindsight. Id. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

The second prong of the Strickland test requires a petitioner to show that counsel's conduct prejudiced him. Strickland, 466 U.S. at 691-92. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. at 693. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." Id.

      2. Analysis

At sentencing, defense counsel argued the trial court should sentence petitioner to the low term on count two because such a sentence would result in a period of incarceration of ten years, "which is pretty much hard time anywhere when you're convicted of a crime like this." (2 RT 349.) Ultimately, the trial court sentenced petitioner, in relevant part, as follows:

> THE COURT: . . . Well, the Court has considered the following sentencing considerations:
>
> The defendant does not appear to be an appropriate candidate for probation based upon Rule 4.413(a); statutory provisions prohibit a grant of probation under 1203.668(a)(8) of the Penal Code.
>
> Even absent that statutory prohibition, this does not appear to this Court to be a probation case because of the circumstances.
>
> As to the circumstances in aggravation under Rule of Court

17

> 4.421(a)(3), the Court finds the victim was particularly vulnerable. She was a child between the ages of 11 and 14 when the offenses occurred, and was in the care of her stepfather when these offenses occurred.
>
> And under Rule 4.421(a) (8), the manner in which the crime was carried out indicated planning. The testimony was that these events occurred when the mother was out of the house, the majority of them, and that also the defendant threatened the victim that bad things would happen if she told her mother about these activities.
>
> Under Rule 4.421(a)(11), the defendant took advantage of a position of trust or confidence to commit the crimes.
>
> The defendant committed these assaults when he was in his parental capacity. Even in her statement the victim says she looked at him as a father figure.
>
> And so the circumstances in mitigation are that under Rule 4.423(b)(1), the defendant has no prior record, or has -- that we have been made aware of, we have no known criminal history.
>
> As to the concurrent or consecutive sentences, Rule 4.425(a)(1) the crimes and objective were predominantly independent of each other.
>
> While I'll say the circumstances in aggravation and mitigation weigh more toward the aggravated side of this matter, I will select the midterm as to Count 2 of 12 years to be the principal term in this matter.
>
> As to Count 1, the Court will impose the midterm on that count as well, run that consecutive, by operation of law that is reduced to two years, and the same for Count 3.
>
> And so the total sentence is 16 years at the California Department of Corrections and Rehabilitation.

(2 RT 350-51.)[6]

To the degree petitioner's complaint concerns the state court's interpretation of its sentencing laws, petitioner should not be heard. A federal court is bound by a state court's finding in that regard. See Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009) ("we have

---

[6] California Rules of Court, Rule 4.421(a) provides, in pertinent part:

> Factors relating to the crime, whether or not charged or chargeable as enhancements include that: … (3) The victim was particularly vulnerable; … (8) The manner in which the crime was carried out indicates planning, sophistication, or professionalism; … (11) The defendant took advantage of a position of trust or confidence to commit the offense.

18

repeatedly held that it is not the province of a federal habeas court to reexamine state-court determinations on state law questions"); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (same). Notably too, the record supports the trial court's factual references as applied to the aggravating factors it selected. (See, e.g., 1 RT 45-46, 54-57, 67, 69-70, 83, 98, 113-14, 119, 123-27, 130, 132-33, 137-39, 142-44, 146.)

In any event, even assuming defense counsel performed deficiently for failing to object to the trial court's use of the victim's vulnerability and petitioner's planning as factors in aggravation, petitioner cannot show prejudice.[7] The trial court also relied upon the fact that, as the victim's stepfather, petitioner took advantage of a position of trust or confidence, noting the victim was in his care when the crimes occurred. The victim called petitioner "Dad." And, there was simply nothing inappropriate about the trial court's findings as they relate to the other two aggravating factors; counsel's objection would not have required the trial court to ignore the victim's age and vulnerability nor the evidence of planning involved. Hence, the likelihood of the trial court electing to impose a low term on this count, while arguably conceivable, is not substantial. Richter, 562 U.S. at 112.

In sum, the state court's determination of petitioner's claim was not unreasonable, nor was it contrary to Supreme Court precedent. 28 U.S.C. § 2254(d). As a result, petitioner is not entitled to habeas relief and the claim should be denied.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[7] Strickland, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies").

19

"Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: February 19, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Loer0853.157